

U.S. Department of Justice

United States Attorney
Eastern District of New York

SDD:DMP/AAS

271 Cadman Plaza East
Brooklyn, New York 11201

April 2, 2015

By Facsimile and ECF

The Honorable Viktor V. Pohorelsky
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

       Re:    United States v. Noelle Velentzas and Asia Siddiqui
                  Criminal Docket No. 15-M-303

Dear Judge Pohorelsky:

      Defendants Noelle Velentzas and Asia Siddiqui are scheduled to be arraigned today on the above-referenced complaint. For the reasons set forth below, the government respectfully submits that the Court should enter a permanent order of detention for both defendants because there is a presumption of detention due to the nature of the charges, and because the defendants present a danger to the community and a risk of flight.[1]

I.    Background

      Early this morning, the defendants were arrested pursuant to a complaint charging them with conspiring to use weapons of mass destruction against persons and property in the United States, in violation of Title 18, United States Code, Section 2332a(a)(2).

      As alleged in the complaint, the defendants have repeatedly expressed their support for violent jihad. For instance, in or about 2009, Siddiqui wrote a poem in a magazine published by al-Qaeda in the Arabian Peninsula in which she exhorted the poem's readers to wage jihad and declared that there is "[n]o excuse to sit back and wait – for the skies rain martyrdom." In the same poem, Siddiqui wrote that she "taste[s] the Truth through fists and slit throats." Similarly, Velentzas has characterized al-Qaeda founder Usama Bin

---

[1] Detailed herein is a proffer of the relevant facts and a discussion of the applicable law pertaining to the pretrial detention of the defendants. See United States v. LaFontaine, 210 F.3d 125, 130-31 (2d Cir. 2000) (government entitled to proceed by proffer in detention hearings).

Laden as one of her "heroes," stated that Bin Laden's ideas are similar to her own, and expressed her view that terrorism is based on Islamic writings found in the Koran.

More recently, Velentzas declared that she and Siddiqui are "citizens of the Islamic State" – a reference to the foreign terrorist organization that is also known as the Islamic State of Iraq and the Levant ("ISIL"). Velentzas has also characterized military strikes on ISIL as tantamount to attacks on her own state. Less than two weeks ago, Velentzas – asked whether she had heard the news about the recent arrest of a U.S. airman who had attempted to travel to Syria to wage jihad – stated that she did not understand why people were traveling overseas to wage jihad when there were more opportunities of "pleasing Allah" in the United States.

Notably, Velentzas has repeatedly expressed the intention of attacking members of law enforcement should they attempt to arrest her. For instance, in June 2014, Velentzas stated that if the police tried to arrest her, she would try to get "one of their weapons [and] shoot them." Velentzas stated that the police "would probably kill us but we will be martyrs automatically and receive Allah's blessings." In a similar statement in October 2014, Velentzas pulled a concealed knife from her bra and showed Siddiqui how she would stab someone with the knife if she were attacked. In December 2014, Velentzas – referring to the recent killing of two New York City Police officers – commented that it was easier to kill police officers than to buy food, because sometimes one has to wait in line to buy food.

Since the summer of 2014, the defendants have been working to further their violent jihadist agenda by constructing an explosive device to be used in an attack on American soil. In their self-proclaimed effort to "make history," the defendants researched numerous explosive precursors. For instance, they researched and acquired some of the components of a car bomb, like the one used in the 1993 World Trade Center bombing; a fertilizer bomb, like the one used in the 1995 bombing of the federal building in Oklahoma City; and a pressure cooker bomb, like the one used in the 2013 Boston Marathon bombing. The defendants have also analyzed failed attempted terrorist attacks in New York City – including the attempted bombings of Times Square and the Herald Square subway station – in an effort to avoid making what they viewed as the mistakes that doomed those efforts.

The investigation recently revealed that the defendants were in possession of propane gas tanks, together with instructions from an online terrorist publication for transforming propane tanks into explosive devices.

Early this morning, agents arrested the defendants at their residences. Pursuant to a search warrant issued by this Court, agents located and seized tools of the trade for the research and construction of explosives. In particular, agents seized three propane gas tanks, soldering tools, pipes, a pressure cooker, fertilizer, flux, detailed handwritten notes on the recipes for bomb making, and extensive jihadist literature. Additionally, agents seized two machetes and two daggers.

2

II.     Legal Standard

Under the Bail Reform Act, Title 18, United States Code, Section 3141, et seq., federal courts are empowered to order a defendant's detention pending trial upon a determination that the defendant is either a danger to the community or a risk of flight. See 18 U.S.C. § 3142(e) (a judicial officer "shall" order detention if "no condition or combination of conditions would reasonably assure the appearance of the person as required and the safety of any other person and the community"). A finding of dangerousness must be supported by clear and convincing evidence. See United States v. Ferranti, 66 F.3d 540, 542 (2d Cir. 1995); United States v. Chimurenga, 760 F.2d 400, 405 (2d Cir. 1985). A finding of risk of flight must be supported by a preponderance of the evidence. See United States v. Jackson, 823 F.2d 4, 5 (2d Cir. 1987); Chimurenga, 760 F.2d at 405.

The Bail Reform Act also sets forth certain offenses for which there is a presumption in favor of detention. Specifically, where a defendant is charged with certain enumerated offenses, the Bail Reform Act provides that "[s]ubject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e)(3). Such presumption is applicable where "the judicial officer finds that there is probable cause to believe that the [defendant] committed" "an offense listed in section 2332b(g)(5)(B) of title 18, United States Code, for which a maximum term of imprisonment of 10 years or more is prescribed." 18 U.S.C. § 3142(e)(3). Section 2332b(g)(5)(B), in turn, lists a number of terrorism offenses, including 18 U.S.C. § 2332a(a)(2), which carries a maximum term of life imprisonment. Accordingly, the charged offense carries this presumption of detention, as the defendants are charged with conspiring to use weapons of mass destruction, in violation of 18 U.S.C. § 2332a(a)(2), which is an offense specified in 18 U.S.C. § 3142(e)(3)(C). Therefore, there is a presumption that no condition or combination of conditions will permit the defendant to be released on bond.

The Bail Reform Act lists the following factors to be considered in the detention analysis: (1) the nature and circumstances of the offenses charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. See 18 U.S.C. § 3142(g). As discussed below, all of these factors weigh heavily against pretrial release.

III.    The Court Should Enter a Permanent Order of Detention for Both Defendants

As set forth above, there is a presumption that no condition or combination of conditions will permit the defendants to be released on bond. Moreover, as set forth below, the factors to be considered in the detention analysis show that the defendants present both a significant danger to the community and a substantial risk of flight if released on bond.

3

A.  The Nature and Circumstances of the Offense Charged

The charged offense is extremely serious. The defendants are charged with conspiring to use weapons of mass destruction to engage in an act of domestic terrorism. The charged offense involves efforts by the defendants to cause the death of others by constructing and detonating an explosive device on American soil. To date, the defendants have conducted extensive studies concerning the construction of an explosive device and have also obtained certain precursors for explosive devices, such as propane tanks, torch lighters, a pressure cooker, and fertilizer.

In listing the "nature and circumstances of the offense charged" as a criterion in the detention analysis, the Bail Reform Act specifically provides that the Court is to consider whether the crime charged is a crime of violence or a Federal crime of terrorism. See 18 U.S.C. § 3142(g)(1). Here, the charged offense unquestionably falls within this category, confirming that Congress viewed these crimes as sufficiently serious to factor against release on bond.

Indeed, as set forth above, Congress recognized the seriousness of this offense by specifically enumerating it among those offenses that carry a presumption that no condition or combination of conditions will be sufficient to permit a defendant to be released on bond. Even where a defendant can rebut this presumption, the Court is still required to give some weight to the presumption in the detention analysis, "keeping in mind that Congress has found that these offenders pose special risks" and that "a strong probability arises that no form of conditional release" will assure the defendant's return to court or adequately protect the community. United States v. Martir, 782 F.2d 1141, 1144 (2d Cir. 1986) (citation and internal quotation marks omitted).

In this case, the charged offense carries a maximum sentence of life imprisonment. The prospect of a lengthy term of incarceration confirms the defendants' serious risk of flight. Indeed, there is every reason to think that they will make efforts to flee so that they can avoid the prospect of a lengthy prison term and so that they can accomplish their objective of achieving martyrdom.

B.  The Weight of the Evidence

The weight of the evidence against the defendants is extremely strong. In recorded conversations, the defendants discussed their comprehensive efforts to research the construction of a bomb, as well as their attempts to acquire precursors for destructive devices, including propane tanks, torch lighters, a pressure cooker, and fertilizer. Accordingly, the evidence against the defendants, which includes their own recorded statements, is extremely strong, and this factor weighs heavily in favor of a finding that the defendants are both a danger to the community and a flight risk.

4

C. The Defendants' History and Characteristics

The defendants' history and characteristics confirm that they are both a danger to the community and present a substantial risk of flight. First, as discussed above, the defendants are a danger to the community because of their expressed support for violent jihad. For example, Velentzas has repeatedly expressed her intent to attack any members of law enforcement who attempt to apprehend her. Moreover, in light of their stated affinity for ISIL, which has counseled followers to engage in "lone-wolf" attacks, there is little reason to believe that either of the defendants will not attempt an attack should they be released on bail.

Given that the defendants face substantial terms of imprisonment, they are highly motivated to flee from the jurisdiction. Notably, Siddiqui has strong ties to Saudi Arabia and other Middle Eastern countries from which any attempts at extradition would likely be futile. Moreover, Velentzas's contact with likeminded individuals such the recently arrested U.S. airman who had attempted to travel to Syria to join ISIL suggests a willingness to flee. Accordingly, the defendants represent a substantial risk of flight if released on bond.

D. The Danger to the Community Posed by the Defendants' Release

As summarized above, the defendants would pose a significant danger to the community if they were to be released on bond. The defendants have expressed support for the violent nature of the attacks carried out by ISIL and have committed themselves to engaging in a violent attack in the United States. Likewise, Velentzas' stated intent to attack members of law enforcement presents not only a significant threat to the law enforcement community but also any civilian bystanders were Velentzas to carry out this threat. Either of those scenarios obviously presents a significant danger to the community. Based on their statements and conduct, were the defendants to be released into the community, they would be likely to continue their efforts to engage in acts of terrorism.

IV.     Conclusion

        For all of the foregoing reasons, the defendants should be detained pending trial.  The defendants are charged with an extremely serious offense, which carries a presumption of detention, and face potential sentences of life imprisonment.  The government respectfully submits that no condition or combination of conditions will assure the safety of the community, the defendants' return to court, or their compliance with the court's directives, and the Court should thus enter a permanent order of detention pending trial.

                                        Respectfully submitted,

                                        LORETTA E. LYNCH
                                        United States Attorney

                                By:     /s/ Alexander A. Solomon
                                        Jennifer S. Carapiet
                                        Douglas M. Pravda
                                        Alexander A. Solomon
                                        Assistant U.S. Attorneys
                                        (718) 254-7000

cc:     Clerk of Court (by ECF and hand)